IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NESHELLA L. DONE,<br><br>          Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of the<br>Social Security Administration,<br>          Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF COMMISSIONER<br><br>Case No. 2:10-cv-00701-BCW<br><br>Magistrate Judge Brooke Wells |

Plaintiff Neshella L. Done seeks judicial review of the determination of the Commissioner of the Social Security Administration which denied her application for Social Security disability insurance benefits.

## BACKGROUND

Plaintiff, Mrs. Done, who was born on October 8, 1957, filed for benefits on April 28, 2008, when she was 50 years old. Plaintiff contends she is disabled due to a combination of impairments including, degenerative disc disease, bulging discs, obesity, depression and anxiety.[1] The Social Security Administrative Law Judge (ALJ) found at Step One of the required sequential evaluation process[2] that Plaintiff has not engaged in substantial gainful activity since April 28, 2008, the application date.[3] At Step Two, the ALJ found that that Plaintiff's severe impairments were "mild degenerative disc disease and obesity."[4] The ALJ

---

[1] Pl.'s Opening Br. at 3.

[2] See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(explaining the five-step sequential evaluation for determining if a claimant is disabled).

[3] Tr. at 12.

[4] Tr. at 12.

further found that the Plaintiff's depression and anxiety disorder were non-severe impairments either alone or in combination with her physical impairments.[5]

At Step Three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained within the regulations.[6]

Next, the ALJ found a residual functional capacity ("RFC") for less than the full range of light work except with the following additional limitations:

> the claimant is limited to occasionally lift and/or carry (including upward pulling) a maximum of 20 pounds occasionally 10 pounds frequently; the claimant must have the option to alternate positions from sitting to standing (the sit/stand option); the claimant must never climb ladders, ropes or scaffolds; the claimant is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling; the claimant must avoid concentrated exposure to heights, machinery, etc.[7]

As to the Plaintiff's, credibility, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms but the Plaintiff's statements concerning the intensity, persistence and limited effects of these symptoms were not credible to the extent they were inconsistent with the above residual functional capacity assessment."[8] In making this determination, the ALJ stated that she came to this conclusion after a "careful consideration of the evidence"[9] and a consideration of the factors set forth in 20 CFR 404.1529 and Social Security Ruling 96-7p.[10] In discussing her application of the factors, the ALJ mentioned claimant's testimony about her daily activities which include: putting dishes in

---

[5] Tr. at 12-13.

[6] Tr. at 13.

[7] Tr. at 14.

[8] Tr. at 15.

[9] Tr. at 14.

[10] Tr. at 17.

2

the dishwasher, cooking once or twice a week, shopping without lifting heavy items and spending time with her grandchildren.[11]  In addition, the ALJ stated that Plaintiff was oriented to person, place, time and purpose.[12]  However, the ALJ held that the Plaintiff overstated her symptoms by not remembering why she was allegedly diagnosed as having bipolar disorder and that due to Plaintiff being a smoker, her testimony was inconsistent with her not being able to afford medical care.[13]  Lastly, the ALJ found that Plaintiff is not always compliant with her treatment or taking her medication as prescribed.[14]  Thus, the ALJ found that the Plaintiff was not credible and that "the claimant can perform at higher levels than the claimant alleges or at higher level than the claimant perceives she can."[15]

At Step Four, the ALJ found that Plaintiff was unable to perform her past relevant work as a housekeeper in a hospital.[16] Then, at Step Five, the ALJ basing her decision on the testimony of a vocational expert, found that Plaintiff could perform the jobs of mail clerk, office helper, and information clerk.[17]  The ALJ made further findings that the Plaintiff was an individual closely approaching advanced age,[18] that Plaintiff had at least a limited education and is able to communicate in English.[19]  The ALJ did not make a determination as to whether Plaintiffs' job skills were transferrable because the ALJ stated, "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework

---

[11] Tr. at 17-18.

[12] Tr. at 18.

[13] Tr. at 18.

[14] Tr. at 18.

[15] Tr. at 19.

[16] Tr. at 21.

[17] Tr. at 22.

[18] Tr. at 21.

[19] Tr. at 22.

3

supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills."[20]

Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.[21] In her appeal, Plaintiff contends that the ALJ's decision should be reversed or at the very least remanded for further proceedings for the following reasons: (1) the ALJ failed to meet her Step Five burden and improperly denied Mrs. Done's claims based on the vocational expert's response to an incomplete hypothetical; and (2) the ALJ improperly rejected the claimant's own subjective complaints and lay witness statements.[22] Lastly, while not formally argued, both parties make mention of the "grid rules" and their application to the instant case.[23]

## ANALYSIS

This Court's review of the ALJ's decision is limited to determining whether her findings are supported by "substantial evidence" and whether the correct legal standards were applied.[24] If supported by substantial evidence, the findings are conclusive and must be affirmed.[25] "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[26] Thus, "[t]he possibility of drawing two inconsistent

---

[20] Tr. at 22.

[21] Tr. at 23.

[22] Plaintiff's adult children, Aaron Done and Angula Lovato provided letters that detailed their observations of their mother's symptoms and overall condition. Both opined that Plaintiffs' impairments and pain level impact her life and daily activities greatly and Mrs. Done's son stated "some days she does not even get out of bed." Tr. 238-245, 279-280. Neither letter was referenced specifically within the ALJ's decision.

[23] Pl.'s Opening Br. at 15; Def.'s Opp'n. Brief at 16, fn. 6.

[24] Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); Ruthledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000); Glenn v. Shalala, 21 F.3d 983 (10th Cir. 1993).

[25] Richardson v. Perales, 402 U.S. 389, 401 (1981).

[26] Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996).

conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[27]

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all evidence.[28]  In its review, the Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[29]  However, a reviewing Court should not re-weigh the evidence or substitute its own judgment for that of the ALJ's.[30]  Further, the Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'"[31]

In applying these standards, the Court has considered the Administrative Record, the parties' briefs and arguments.  The Court deems oral argument to be unnecessary, and finds as follows:

### A. ALJ's Rejection of Claimant's Subjective Complaints and Lay Witness Statements

Plaintiff argues that the ALJ erred in evaluating the credibility of the Plaintiff's subjective complaints and therefore asked an incomplete hypothetical to the vocational expert at the hearing.  Specifically, Plaintiff alleges that the ALJ rejected Mrs. Done's subject complaints without providing valid reasons.  For example, Plaintiff claims that the ALJ improperly asserted that Plaintiff's pain complaints are inconsistent with the record which indicates that when the claimant is compliant with medications her symptoms are under control.  Also, the ALJ stated that the Plaintiff overstates her symptoms and her daily activities are inconsistent with her

---

[27] Zoltanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2000).

[28] Id.

[29] Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999).

[30] Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

[31] Lax, 489 F.3d at 1084 (quoting Zoltanski, 372 F.3d at 1200).

5

alleged pain and Plaintiff's assertions that she cannot afford medical care are unsupported because she is a smoker.

Generally, "the levels of medication and their effectiveness, the extensiveness of the attempts (medical and nonmedical) to obtain relief…the nature of daily activities, subjective measures of credibility determinations…are peculiarly" the province of the finder of fact, and the court will not upset determinations when supported by substantial evidence.[32]  Although credibility determinations "should be closely and affirmatively linked to substantial evidence," they "do not require a formalistic factor-by-factor recitation of the evidence."[33]

Further, Social Security Ruling ("SSR") 96-7p clarifies the standards an ALJ must apply when evaluating the credibility of an individual's statements, including his or her allegations of pain.[34]  Thus, in addition to the objective medical evidence, an ALJ should consider the following factors when assessing the credibility of an individual's statements:  (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate or aggravate the symptoms; (4) the type, dosage, effectiveness of any medications, and (5) side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (6) treatment, other than medication the individual receives or has received for relief of pain or other symptoms; (7) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (8) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.[35]

---

[32] Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

[33] Id.; Qualls, at 1372.

[34] See SSR 96-7p.

[35] Id.; see 20 C.F.R. §§ 404.1529(c), 416.929(c); see also Thompson v. Sullivan, 987 F.2d 1489 (10th Cir. 1993).

In this case, the ALJ cited and considered the proper factors in reaching her determination that overall, Plaintiff's testimony about her disabling symptoms was not entirely credible.[36] First, the ALJ noted that the Plaintiff's daily activities were inconsistent with Plaintiff's testimony and the medical record. The ALJ noted that Plaintiff's own testimony and the medical record established that the Plaintiff was able to independently perform activities of daily living, including caring for her own personal needs including cooking and grooming, doing dishes, putting them in the dishwasher, shopping for groceries but not lifting heavy things, using a computer, driving, watching television, spending time with her grandchildren, and playing games.[37]

After a thorough review of the medical evidence, the ALJ properly considered Plaintiff's impairments and symptoms. The ALJ noted that Plaintiff's weight could reasonably be expected to exacerbate her back problems.[38] The ALJ also discussed Plaintiff's usage of the medications Cymbalta and Lortab and their effectiveness.[39] Also, the ALJ noted that Plaintiff's medication makes her tired and drowsy,[40] and that the Plaintiff is not always compliant with taking neither her medication as prescribed nor her treatment.[41] The opinion discusses the Plaintiff's testimony as to her symptoms when she does not have medication.[42] Further, the ALJ's opinion discusses the Plaintiff's noncompliance with a doctor's order to not to lie down for extended periods of time and walk her dog around her apartment complex—which Plaintiff has failed to do.[43] The

---

[36] Tr. at 17, 18-19.

[37] Tr. at 17-18.

[38] Tr. at 17.

[39] Tr. 17-18.

[40] Tr. at 14.

[41] Tr. at 14, 18.

[42] Tr. at 18.

[43] Tr. at 14.

ALJ also properly found that Plaintiff's reports that she was a smoker contradict the fact that she cannot afford medical care[44]  Lastly, to further support the conclusion that the Plaintiff "overstates" her symptoms, the ALJ referred to evidence that Plaintiff had stated that she had been diagnosed as having bipolar disorder but could not recall any symptoms of mania.[45]

It appears that much of the Plaintiff's argument relates to the weight of the evidence before the ALJ.  This is not a proper basis for appeal.[46]  The ALJ relied upon and considered the appropriate factors and articulated sufficient reasoning for her finding in determining that Plaintiff's testimony was not fully persuasive.  Accordingly, the Court concludes that the ALJ's determinations "closely and affirmatively are linked to substantial evidence and not just a conclusion in the guise of findings."[47]  Thus, the Court concludes that the ALJ did not err in reaching her determination about Plaintiff's credibility.

Next, Plaintiff argues that the ALJ failed to properly consider lay witness statements of Plaintiff's two adult children in making a determination as to her credibility.  In her opinion, the ALJ makes no specific reference to these statements and it is not clear whether they were even specifically acknowledged, considered or totally discounted.

Yet, where the ALJ's decision states that she considered all of the evidence, the general practice in the 10th Circuit is to take the lower tribunal at its word and not disrupt the ALJ's findings.[48]  In Brecia v. Astrue,[49] the Plaintiff argued that the ALJ ignored the evidence of the

---

[44] See Strong v. Soc. Sec. Admin., 88 Fed. App'x 841, 846 (6th Cir. 2004).

[45] Tr. at 18.

[46] See Shepherd v. Apfel, at 1199; Qualls v. Apfel, at 1372.

[47] Kepler v. Chater, at 391 (citations omitted).

[48] Hackett v. Barhart, 395 F.3d 1168, 1173 (10th Cir. 2005).

[49] Brecia v. Astrue, 287 Fed. App. 626, 630-631 (10th Cir. 2008).

Plaintiff's sister and friend who provided written descriptions of the Plaintiff's limitations.[50] The 10th Circuit held that while the ALJ did not explicitly discuss the statements, the court did not believe this omission was grounds for remand where the statements were largely cumulative of the Plaintiff's impairments.[51]

Here, the ALJ stated that she considered the entire record[52] but failed to explicitly mention the statements of the Plaintiff's children that were largely cumulative of the Plaintiff's testimony regarding her ability to work. Therefore, as in Brecia, we decline to find grounds for remand based on the lack of citation or mention to particular witness statements.

### B. ALJ's Reliance on Vocational Expert's Testimony

Plaintiff claims that the ALJ improperly based her decision at Step Five on the vocational expert's response to an incomplete hypothetical for two reasons.[53] First, Plaintiff argues the ALJ failed to account for all of Mrs. Done's physical limitations in propounding the hypothetical question to the vocational expert. Second, Plaintiff claims that the ALJ did not adequately develop the record on conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT).

First, the Plaintiff argues that the ALJ erred by posing a hypothetical to the vocational expert that did not reflect all of Plaintiff's limitations. Plaintiff essentially asserts that the hypothetical given to the vocational expert should have included Plaintiff's apparent inability to lift more than ten pounds and account for days when she is not able to get out of bed due to her back pain. This argument is without merit.

---

[50] Id.

[51] Id.

[52] Tr. at 12.

[53] Pl.'s Opening Br. at 14.

9

"[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision."[54] The Court has already concluded that the ALJ did not err and relied upon substantial evidence in her treatment of Mrs. Done's credibility and restrictions. Accordingly, the ALJ was not required to include these limitations in her hypothetical to the vocational expert.[55] In addition, the Court agrees with the Defendant's arguments that the lifting restriction and Plaintiff's inability to get out of bed some mornings were not support by the objective medical evidence. Therefore, the ALJ did not err by not including these restrictions in the hypothetical to the vocational expert.

Next, when a conflict arises between the Dictionary of Occupational Titles ("DOT") and expert testimony, an ALJ must investigate and elicit a reasonable explanation for any conflict.[56] Further, the 10th Circuit has found that a vocational expert can rely on his expertise and experience to justify a departure from the DOT.[57]

In the instant case, the ALJ did ask the vocational expert about any deviations between the expert's testimony and the DOT.[58] The vocational expert explained that the DOT did not address the sit/stand limitation and "to the extent there are any inconsistencies, the vocational expert explained her opinion is based on her education, study of these jobs, and the economy."[59]

---

[54] Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991).

[55] See Qualls, 206 F.3d at 1373 ("The ALJ propounded a hypothetical question to the vocational expert that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to the hypothetical provided a proper basis for the ALJ's disability decision.")

[56] Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999).

[57] Rogers v. Astrue, 312 Fed. App'x 138, 141-142 (10th Cir. 2009)(reasoning that providing professional placement experience "is precisely what reliance on evidence from a [vocational expert] is meant to accomplish.")

[58] Tr. at 23.

[59] Id.

Like Rogers,[60] because the vocational expert testified that based upon professional experience jobs existed in the national economy that would support Plaintiff's limitations, the apparent conflict/silence regarding the sit/stand option within the DOT and the vocational expert's testimony was reasonably explained and the ALJ could rely on that testimony as substantial evidence to support her determination of nondisability.

### C. ALJ's Consideration of the "Grid Rules" in Deciding Plaintiff's Disability Status.

Both parties in their memorandum briefly discuss the "grid rules" in relation to Mrs. Done's claim for disability benefits. The Plaintiff argues that due to her age, her limited education and work history, the grid rules dictate a finding of disability even if Plaintiff could perform the full range of sedentary work.[61] On the other hand, the Government asserts that because Plaintiff was not found to be capable of sedentary work but instead capable of light work the grid rules dictate a finding of "not disabled."[62] As stated in the ALJ's opinion, the ALJ found Plaintiff to be capable of "less than the full range of light work."[63] Thus, Plaintiff is falls in between the sedentary and light work categories as set forth in 20 C.F.R. Part 4040, Subpt. P, App.2, Rule 200.00 et al.

Grid rules are used as a shortcut method to evaluate whether or not a person is disabled in cases where specific findings are made that precisely coincide with the criteria set forth within the "grids."[64] Thus, under the grid rules, specific findings of fact must be made as to residual functional capacity (e.g. sedentary, light work, medium work, etc.), age (e.g. closely approaching

---

[60] Rogers, at 141-142.

[61] Pl.'s Reply Br. at 3.

[62] D.'s Opp'n Br. at 16.

[63] Tr. at 14.

[64] Haddock, at 1088 (stating "[w]hen a claimant's exertional level, age, education, and skill level (i.e. work experience) fit precisely within the criteria of a grid rule, an ALJ may base a determination of nondisability conclusively on the grids.")(internal citations omitted).

advanced age, advanced age, retirement), education (e.g. marginal, limited, etc.) and previous work experience (e.g. skilled or unskilled).[65] Here, the ALJ found that Plaintiff could perform a full range of light work with limitations and properly discussed at length the framework in a situation where a claimant cannot perform the demands at a given exertional level.[66] Therefore, because Plaintiff falls between the ranges of sedentary and light work, the grid rules cannot be used as the sole basis for a finding of disability or nondisability.[67] Thus, Plaintiff's arguments regarding the dictations of the grid rules are without merit and not dispositive in relation to the Plaintiff's claim for disability benefits.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court holds that Plaintiff's arguments fail and do not warrant remand for further proceedings in this case. Therefore, IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED.

DATED this 27th day of September, 2012.

_Brooke C. Wells_
Brooke C. Wells
United States Magistrate Judge

---

[65] 20 C.F.R. Part 404, Subpt. P, App.2, § 200.00 et al.

[66] Tr. at 22.

[67] See 20 C.F.R. Part 404, Subpt. P., App. 2, § 200.00(d); Haddock, at 1088 ("when a requirement to alternate sitting and standing limits a claimant's ability to do the full range of sedentary work, as in this case, an ALJ may not rely on the shortcut method.")